(No. 2339—)

FRED GRASSLE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 4, 1934.*

*Per Curiam:*

The claimant, Fred Grassle, who owns certain property in the city of Joliet, which immediately adjoins The Illinois Waterway, and who claims that such property has been damaged by the construction of such Waterway and the Cass Street Bridge over the same, filed his claim for damages with the Department of Public Works and Buildings, pursuant to the Statute of this State commonly known as The Illinois Waterway Act. The claimant and the Department of Public Works and Buildings were unable to agree upon the amount of damages to which claimant is entitled, and stipulated that the claim be submitted to this court for determination. It is stipulated and agreed that the award made by this court, if any, shall be paid by the Department of Public Works and Buildings and not by way of appropriation made by the legislature, as in cases where awards are made by this court under the Court of Claims Act.

The lot owned by the claimant is situated at the Northeast corner of the intersection of Western Avenue (called Cass Street east of the Waterway) and Bluff Street in the city of Joliet immediately west of the Waterway, which said lot has a frontage on Western Avenue of Eighty-five and two-tenths (85.2) feet and a frontage on Bluff Street of One hundred (100) feet. It is improved with a three-story brick

building and basement, erected in 1912. The basement is of concrete construction, and has a cement floor and built-in bakery oven which was used for the operation of a bakery until the latter part of 1929; the first floor contains four storerooms, all of which face on Western Avenue and are of approximately the same dimensions; the second and third floors each contain four five-room apartments.

Prior to the construction of The Illinois Waterway, the street grade on Western Avenue in front of the property in question was approximately level and the sidewalk and entrances to the stores on the first floor were approximately even with the then existing grade.

In the course of the construction of The Illinois Waterway through Joliet, the old bridge over the Illinois and Michigan Canal was removed and a new bridge over the Illinois Waterway was constructed, the west approach to which is on a seven per cent (7%) grade. Such grade commences at a point variously stated to be from seventeen (17) to twenty (20) feet east of the west property line, and the approach, as now constructed, is about five feet above the former sidewalk level at claimant's east property line.

Claimant relies upon the provisions of the Illinois Waterways Act and seeks to recover damages which he claims have resulted and will result to his property by reason of the construction and maintenance of The Illinois Waterway, including the Cass Street bridge over the same, and the work done in connection therewith. Claimant maintains that he is entitled to recover for the following elements of damage:

1. The loss of revenue from the time it was announced that the present grade was to be the permanent grade for the approach to the bridge, to-wit, from the summer of 1930, to date.

2. The difference in market value of the property before and after the completion of the Illinois Waterway Improvement.

3. The cost of remodeling and reconstructing the building on the property so as to conform to the new street grade.

It is not questioned that the claimant has sustained damages, and consequently the only question for this court to determine is the question as to the amount of damages to which the claimant is entitled.

The true measure of damages in cases of this kind, that is, for property damages by a public improvement, but not taken for public use, is the difference between the fair cash market value of the property unaffected by the improvement and its fair cash market value as affected by it. Benefits to land not taken may be set off against damages to lands not taken. Damages must be direct and proximate and not such as are merely speculative and remotely contingent. *Department of Public Works* vs. *McBride,* 338 Ill. 347, 352; *Department of Public Works* vs. *Caldwell,* 301 Ill. 232, 247.

The several elements of damage claimed, as above, will be considered in the order above set forth.

## I.

### Loss of Revenue From Summer of 1930 to Date.

With reference to this item, it has been repeatedly held by our Supreme Court that inconvenience, expense, or loss of business necessarily occasioned to the owners of abutting property during the progress of the work by the construction of a public improvement, do not constitute damage to property not taken, within the meaning of the Constitution, but merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made and therefore give no cause of action against a municipality therefor. *Osgood* vs. *City of Chicago,* 154 Ill. 194; *Lefkovitz* vs. *City of Chicago,* 238 Ill. 23; *Chicago Flour Co.* vs. *City of Chicago,* 243 Ill. 218; *Peck* vs. *Chicago Railway Co.,* 270 Ill. 35, 40.

If such rule applies to a municipality, it must apply with equal force and effect to the State, and we therefore award no damages against the State as to the item claimed for loss of revenue.

## II.

### Depreciation in Market Value.

On the question as to the difference in the market value of the property prior to and subsequent to the construction of the Waterway, four witnesses testified on behalf of the claimant, one being the son-in-law of the claimant and the others being men who had had considerable experience in real estate values and appraisals in the City of Joliet.

As in most cases where similar questions are involved, there is a wide divergence in the views of the several witnesses. The witnesses for the claimant differed greatly from each other in their opinions as to value, and there was a wide difference between the average of the witnesses for the claimant and the average of the witnesses for the respondent.

After a careful consideration of all of the evidence, the court is of the opinion that the fair cash market value of the property just prior to the construction of The Illinois Waterway was $65,400.00; and that the fair cash value of such property after the construction of the improvement, and assuming that certain alterations which had been recommended by the architects for the respondent had been made, was $34,700.00.

The record shows that during the period of time in question, there was a decrease in rentals in the City of Joliet, of approximately forty per cent (40%), and during the same period a decrease in market value of real estate of approximately twenty-five (25) to thirty per cent (30%), which was attributable solely to economic conditions. Assuming that the value of the property prior to the making of the improvement was $65,400.00, and that there was a decrease in the market value of thirty per cent (30%) as the result of economic conditions, the value of the property at the present time, entirely disregarding the Waterway Improvement, would be $45,780.00. Assuming the present value of the property, after the making of the improvements suggested by the State architect, is $34,700.00, as above set forth, there is a loss in the amount of $11,080.00, which, in our opinion, represents the depreciation in the market value of the property as the result of the construction of the Illinois Waterway. The present valuation of $34,700.00 was based, however, upon the assumption that the alterations and repairs necessitated by construction of the Waterway had been made, and the cost of such alterations and repairs constitutes the third item of damages claimed.

## III.

### COST OF REMODELING AND RECONSTRUCTING BUILDING.

Mr. J. E. Coll, an architect, who testified on behalf of the claimant, estimated the total cost of making the alterations

and repairs necessitated by the change in grade of Western Avenue, in accordance with the drawing prepared by the State architect, as well as the cost of redecorating the interior of the entire building, and including also a ten per cent charge for overhead and supervision, and a ten per cent profit—at the sum of $9,610.34, and submitted a detailed and itemized statement of the several items thereof.

We feel, however, that the evidence does not justify a charge for redecorating the second and third floors of the building, and must therefore exclude from the estimate of Mr. Coll the item of $2,160.00 charged by him for decorating the second and third floors, and must also make the necessary adjustments on that account for overhead and supervision as well as profit. After making such deduction and making the necessary adjustments as aforesaid, we have the sum of $6,996.80 as the net cost of remodeling, repairing and decorating the building to the extent made necessary by the construction of the Waterway and the bridge over the same.

With reference to the claim now made to cover the cost of waterproofing the basement and tearing down and reconstructing the bakery, we further find that the evidence does not justify the charging of that expense to the State. No claim therefor is made in the complaint and the itemized statement prepared by the architect, J. E. Coll, who testified on behalf of claimant, which purports to cover all of the items of expense connected with the remodeling, altering and repairing of the building, contains no item whatsoever relating either to the waterproofing of the walls or the tearing down and reconstruction of the bakery. The bakery has been vacant since the Fall of 1929 and consequently it cannot be said that such vacancy resulted from the construction of the Waterway. Prior to the construction of the Waterway, there was no entrance direct from the bakery to either Western Avenue or Bluff Street, and consequently there is no interference with ingress to or egress from said basement from either of said streets as the result of the change of grade. The evidence discloses no reason aside from economic conditions, why such basement should not produce as much revenue at this time as it did prior to the construction of the Illinois Waterway, and consequently we award no damages for that item.

From the foregoing, therefore, we conclude that the claimant is entitled to recover the following items of damage to his property on account of the construction of the Illinois Waterway and the bridge over the same, to-wit:

1. Depreciation in market value of the property, as above set forth...................................... $11,080.00
2. Cost of remodeling, altering, repairing and redecorating, as above set forth............................ 6,996.80

 Total........................................... $18,076.80

Award is therefore hereby made in favor of the claimant, Fred Grassle, and against the State of Illinois, for the sum of Eighteen Thousand Seventy-six Dollars and Eighty Cents ($18,076.80), payment to be made by the Department of Public Works and Buildings of the State of Illinois within fifteen (15) days from the entry of this order, in accordance with the stipulation heretofore filed herein.